UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KANAN, CORBIN, SCHUPAK & ARONOW, INC., <br><br>            Plaintiff, <br><br>      -against- <br><br> LEWIS GOLDBERG, <br><br>            Defendant. | Civil Action No. 26-CV-6664 <br><br> **VERIFIED COMPLAINT** <br><br> **Jury Trial Demanded** |

Plaintiff Kanan, Corbin, Schupak & Aronow, Inc. ("KCSA" or "Plaintiff"), by its attorneys, Ellenoff Grossman & Schole LLP, alleges, upon knowledge as to itself and its own acts, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is an action for injunctive relief and damages arising from Defendant Lewis Goldberg's misappropriation and threatened use of KCSA's confidential and proprietary information and trade secrets, including KCSA's AI tools, AI workflows, proposal-writing system, prompt libraries, and related methodologies and code, which Goldberg extracted using KCSA's Claude Enterprise AI system on, and after, the day his employment was terminated. KCSA also seeks to enjoin Goldberg's solicitation of KCSA clients in violation of the Shareholders' Agreement of Kanan, Corbin, Schupak & Aronow, Inc., dated December 31, 2008 ("Shareholders Agreement"), and his fiduciary duty as an officer and director of KCSA.

2. KCSA seeks, among other relief, a temporary restraining order, preliminary injunction, and permanent injunction, prohibiting Goldberg from using KCSA's AI tools and related confidential and proprietary materials for any purpose including solicitation of KCSA clients and prospective clients, requiring the return and/or destruction of all such materials in Goldberg's

{01671659.DOCX.4}

possession, custody, or control, and prohibiting Goldberg's solicitation of KCSA's clients. The temporary restraining order and preliminary injunction shall preserve the status quo until this dispute can be arbitration under Section 8.7 of the Shareholders Agreement.

## PARTIES

3. Plaintiff KCSA is a New York corporation with its principal place of business in New York, New York.

4. KCSA is a public relations firm that does business under the trade name "KCSA Strategic Communications."

5. Defendant Lewis Goldberg is an individual residing in the State of New Jersey.

6. Goldberg was employed by KCSA for approximately 22 years. KCSA terminated Goldberg's employment on July 14, 2026. For the last few years of his employment, Goldberg worked remotely, primarily from his home in New Jersey.

7. Goldberg has been, and remains, a minority shareholder, director, and officer (Secretary) of KCSA.

## JURISDICTION

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.* ("DTSA") and the Computer Fraud and Abuse Act (the "CFAA"), 18 U.S.C. § 1030 *et seq.*

9. This Court has supplemental jurisdiction over Plaintiff's related common-law claims, under 28 U.S.C. § 1367, because those claims form part of the same case or controversy.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims occurred in this district, including Goldberg's employment by a New York-based company (KCSA), his status as an officer and director of

{01671659.DOCX.4}                    2

KCSA, his access to, and use of, KCSA systems and confidential information, and the resulting harm and threatened harm to KCSA in this District. Goldberg is also a shareholder, director, and officer of KCSA.

11. This Court has personal jurisdiction over Goldberg because his unlawful actions within and outside of New York caused harm to KCSA within the State of New York, and Goldberg regularly transacted business within the State of New York. Therefore, this court may exercise personal jurisdiction under CPLR 301 and CPLR 302(a)(1), (2), and (3).

<strong>FACTUAL ALLEGATIONS</strong>

**KCSA's confidential information and trade secrets**

12. KCSA has developed valuable confidential and proprietary business information, including internal proposal-development methodologies, prompt templates and libraries, "pushback language" used to address prospective-client objections, formatting rules and slide-deck specifications, and proprietary AI-related workflows used to analyze data and generate client-facing deliverables.

13. KCSA has also developed proprietary AI tools and workflows, including (among other things) an "audit-to-deck" workflow that includes (i) defined data schemas, (ii) an 18–22 slide deck architecture and build checklist, (iii) proprietary analysis methodologies (including sentiment aggregation, citation-rate analysis, flagged-concern clustering, and "training-cutoff hallucination" detection logic), and (iv) code scaffolding to generate slide decks with defined structure and layout logic.

14. This confidential and proprietary information derives independent economic value from not being generally known and not being readily ascertainable by proper means by competitors and others who could obtain economic value from its disclosure or use.

15. KCSA has taken reasonable measures to maintain the secrecy of its confidential and proprietary information and trade secrets, including restricting access to internal systems and protecting them with passwords and anti-hacking tools, and maintaining such materials within KCSA's information technology environment, including KCSA's Claude Enterprise AI tool purchased with KCSA funds.

**Goldberg's role at KCSA and access to KCSA systems**

16. Goldberg was employed by KCSA and, during approximately the last 18 months of his employment, devoted a majority of his KCSA work time to developing AI tools for KCSA.

17. In the course of that work, Goldberg used KCSA's information technology systems, and the AI tools he used for his work, including KCSA's Enterprise ChatGPT subscription, and KCSA's Claude Enterprise AI tool – were purchased with KCSA funds.

18. KCSA terminated Goldberg's employment on July 14, 2026.

19. Upon information and belief, specifically, Claude Enterprise AI "conversations" Goldberg engaged in after his employment had terminated, notwithstanding the termination of his employment, Goldberg retained access to, or otherwise used, KCSA's Claude Enterprise AI environment and/or related KCSA systems to extract KCSA's confidential and proprietary materials and take and keep them in his personal custody and control.

**The July 14 Extraction Using Claude Enterprise**

20. On July 14, 2026, the date KCSA terminated Goldberg's employment and after he was informed of his termination, Goldberg initiated two separate Claude conversations using variations of the prompt: "I want to replicate this, give me everything I need."

21. In those conversations, Goldberg caused Claude to generate four files (the "July 14 Files") that replicate and embody KCSA's confidential and proprietary information and trade secrets.

22. One of the July 14 Files is titled "KCSA_Proposal_System_Replication_Package.md." Goldberg instructed Claude to consolidate "the raw files/prompts in one place."

23. The "KCSA_Proposal_System_Replication_Package.md" file contains, among other things:

a. KCSA's internal new-business proposal methodology and process guide;

b. prompt templates used to draft client proposals;

c. "pushback language" used in KCSA proposals to counter prospect objections;

d. formatting rules and a slide-deck specification; and

e. a written checklist for KCSA's proposal process.

24. Goldberg also requested that Claude replicate "the whole workflow end-to-end (audit + deck)," which generated three additional files: "README.md," "analysis.py," and "build.js."

25. The "README.md" file documents a CSV data schema the audit tool must output, an 18–22 slide deck architecture, and a build checklist.

26. The "analysis.py" file implements KCSA's proprietary analysis methodology, including sentiment aggregation, citation-rate analysis, flagged-concern clustering, and "training-cutoff hallucination" detection logic KCSA developed.

27. The "build.js" file provides a JavaScript scaffold (using the pptxgenjs library) that generates a slide deck, including slide structure, layout logic, and helper functions for multiple slide types.

28. In the Claude conversations, Claude told Goldberg that "the KCSA AI Lab panel testing tool itself" was an internal tool that Claude could not replicate, and that what was generated "replicates everything downstream of its CSV output."

29. The July 14 Files and the information they embody are confidential, proprietary materials developed by KCSA and/or generated by Goldberg during the course and scope of his employment for KCSA, using KCSA resources and systems.

30. On July 31, 2026, KCSA accessed the Replit account Goldberg had used for his work for KCSA. Replit is an online platform that allows users to write code, collaborate with others, and build full software applications directly inside a web browser.

31. On July 31, 2026, KCSA discovered that Goldberg gave Claude commands that were variations of a command to "please give me the entire, most current, accurate code base for this in one downloadable zip file."

32. Logs show that, using that command, Goldberg downloaded all the code for each of the KCSA tools. That includes: KCSA Connecttome; KCSA Auth; KCSA Anasi; KCSA Rainmaker; Crisis Canary; KCSA Infui; KCSA Wirehound; KCSAndra; KCSA Awards Tool; KCSA Conference Connecttome; Opinion Finder; AI perception Tool; Podscope; Client Impact Dashboard.

33. Lastly, Goldberg downloaded KCSA CMS which potentially has details of KCSA's clients and how much they each pay.

34. All of the foregoing materials gathered by Goldberg through his use of Claude or ChatGPT were confidential, proprietary, materials that Goldberg generated during the course and scope of his employment with KCSA.

**Goldberg's Competing Venture and Threatened Use of Trade Secrets**

35. In Claude conversations dated July 20–21, 2026, Goldberg discussed forming a new firm that would compete with KCSA.

36. In those conversations, Goldberg described the new firm's name (as of July 21, 2026) as "GPR," and described "GPR" as standing for "Generative PR" or similar.

37. Goldberg represented that the firm's website would be "GoldbergPR.com," and that his founder email would be lewis@goldbergpr.com.

38. Goldberg described a core product called "GPR Lens," which he characterized as a direct rebuild of KCSAlign's functionality (same 25-question panel, 4 providers, sentiment/source analysis, deck generator) under new branding.

39. Goldberg described positioning for the new firm as an "AI-native PR firm" targeting founders in "emerging sectors," including cannabis, psychedelics, and AI.

40. Goldberg directed that the new firm's design and branding be deliberately differentiated from KCSA's visual system.

41. Goldberg directed Claude to use KCSA's internal AI Lab tools as creative inspiration for the new firm's logo, naming "KCSAlign," "Crisis Canary," and a third tool called "Remy," and described internal mechanics of those tools—including Crisis Canary's "corroboration-gate logic" and KCSAlign's "25-question panel structure"—as conceptual bases for the new firm's brand identity.

**Goldberg's Continued Possession and Control of KCSA's AI Tools**

42. On July 31, 2026, Goldberg spoke with KCSA's Chief Human Resources Officer ("CHRO") about switching the payments for the AI Tools to a KCSA credit card. In that conversation, Goldberg refused to give the CHRO the passwords for the AI Tools and said he would not do so until KCSA and Goldberg made what he considers to be a fair agreement on the repurchase of his shares. KCSA was required to obtain assistance from its information technology department to gain access.

43. On August 1, 2026, the CHRO learned that Goldberg had transferred the account credentials for part of KCSA's AI Tools to his personal email account, enabling him, upon information and belief, to continue to access and use KCSA's AI Tools.

44. Goldberg's extraction of the July 14 Files and his stated intent to rebuild KCSA's functionality under a competing brand demonstrate actual and threatened misappropriation and use of KCSA's trade secrets and confidential information.

45. Unless enjoined, Goldberg will continue to use and/or disclose KCSA's confidential and proprietary information and trade secrets, causing irreparable harm to KCSA for which there is no adequate remedy at law.

46. Goldberg is a party to the KCSA Shareholders Agreement, dated December 31, 2008 and to Amendment No. 1 thereto.

47. Section 6.1 of the KCSA Shareholders Agreement provides that "[d]uring the Restricted Period, each party to this Agreement agrees that he shall not, directly or indirectly, and shall not permit any of his Affiliates to, directly or indirectly . . . (iii) induce or attempt to induce any customer or client, supplier or other business relation of the Corporation to cease doing business with, or reduce the amount of business it does with, the Corporation or in any way interfere with the relationship between any such customer, client, supplier or business relation . . ."

48. Section 6.3 of the KCSA Shareholders Agreement provides that "[f]or purposes of this Agreement, the term "Restricted Period" for each Shareholder means the period during which such Shareholder is employed by the Corporation and continuing until the second anniversary of the date such Shareholder ceases to be employed by the Corporation."

49. Section 6.5 of the KCSA Shareholders Agreement provides, in pertinent part, that "[e]xcept in connection with the performance of a party's duties to the Corporation, each party hereto shall keep confidential and not reveal, and shall cause its Affiliates and the officers, directors, employees,

partners, agents and representatives of such party and its Affiliates to keep confidential and not reveal, to any other person . . . any and all confidential documents, trade secrets and other confidential information concerning, relating to or in connection with the Corporation, that come to the knowledge of such party . . ."

50. Section 8.4 of the Shareholders Agreement provides that, "[i]n addition to, and not in lieu of, other remedies, any Shareholder and/or the Corporation shall be entitled to specific performance of the terms of this Agreement on the part of any person bound hereby and/or injunctive relief against violation thereof."

51. Section 8.7 of the Shareholders Agreement provides that "[a]ny dispute or controversy arising out of, based on, or in connection with this Agreement, shall be settled by arbitration to be held in the City of New York in accordance with the Commercial Arbitration Rules then in effect of the American Arbitration Association or any successor thereto."

52. The arbitrator may grant injunctions or other relief in such dispute or controversy.

53. During the "Restricted Period" as defined in the KCSA Shareholders Agreement, Goldberg solicited a KCSA client, Edibles.com.

54. This solicitation is reflected in a text message from the president of Edibles.com to a managing director at KCSA, which said, "Lewis [Goldberg] did text me and his friend (Ronan?) that he is starting his own agency. I spoke with Somia, she didn't have much of a reaction but agreed an intro call at some point with the other princip[al]s would be good." The person referred to as "Somia" is Somia Farid Silber, Chief Executive Officer at Edibles.com.

55. Additionally, on the date of his termination, July 14, Goldberg took several steps to pitch the CEO of Heading Health using misappropriated KCSA materials. As an employee, Goldberg ran media research on Heading Health (a company already in KCSA's own BD pipeline). Later in the same day, Claude conversation thread Goldberg had used as an employee for his work on

Heading Health, Goldberg was drafting a client-solicitation letter that opens with "I left KCSA and founded Goldberg PR," pitches the CEO directly, and explicitly invokes an AI-perception-audit check. The letter tells the Heading Health CEO, "I ran a check on how the internet — specifically the AI models people increasingly use to research a company... currently describes Heading Health." In other words, Goldberg took KCSAlign's core methodology and repackaged it as a personal sales pitch from Goldberg PR.

## CLAIMS FOR RELIEF
### COUNT I — Misappropriation of Trade Secrets
### (Defend Trade Secrets Act)

56. Plaintiff repeats and realleges all preceding as if fully set forth herein.

57. KCSA's confidential and proprietary information described above constitutes "trade secrets" within the meaning of the Defendant Trade Secrets Act, 18 U.S.C. §§ 1836, 1839(3), including but not limited to KCSA's proposal-writing system, prompt libraries, AI workflows, analysis methodologies, and code and documentation embodied in the July 14 Files.

58. KCSA took reasonable measures to keep its trade secrets secret, and the trade secrets derive independent economic value from not being generally known.

59. Goldberg acquired KCSA's trade secrets by improper means, including by extracting and replicating them through KCSA's Claude Enterprise AI environment after termination of his employment and without authorization.

60. Goldberg has used and/or threatens to use KCSA's trade secrets to compete with KCSA, including by rebuilding KCSA's functionality under the "GPR" brand and "GPR Lens."

61. Goldberg's conduct constitutes misappropriation under 18 U.S.C. § 1839(5) and entitles KCSA to injunctive relief, damages, exemplary damages (as applicable), and attorneys' fees under 18 U.S.C. § 1836.

## COUNT II — Misappropriation of Trade Secrets

62. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

63. KCSA possessed trade secrets under New York and/or New Jersey law, including the confidential and proprietary information and trade secrets described above.

64. Goldberg misappropriated KCSA's trade secrets by using improper means to acquire them and by using and/or threatening to use them in competition with KCSA.

65. KCSA has suffered and will continue to suffer damages and irreparable harm, absent injunctive relief.

## COUNT III — Unfair Competition

66. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

67. Goldberg misappropriated the fruits of KCSA's labor, skill, and expenditures, including KCSA's proprietary AI workflows, methodologies, and proposal system, and is using and/or threatening to use them to compete unfairly with KCSA.

68. Goldberg's conduct constitutes unfair competition under New York and/or New Jersey law and has caused and will cause KCSA damages and irreparable harm.

## COUNT IV — Breach of Fiduciary Duty

69. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

70. Upon information and belief, as a director and officer of KCSA, Goldberg owed fiduciary duties to KCSA, including duties of loyalty and care.

71. Goldberg breached his fiduciary duties under New York and/or New Jersey law by, among other things, misappropriating KCSA's confidential and proprietary information and trade secrets for his own benefit and to compete with KCSA, including by extracting and replicating KCSA materials through Claude and by planning a competing venture.

72. KCSA has suffered and will continue to suffer damages and irreparable harm as a result of Goldberg's breaches.

### COUNT V – Unjust Enrichment

73. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

74. Goldberg has unjustly enriched himself by taking KCSA's confidential and proprietary information and trade secrets for his own benefit and to compete with KCSA, including by extracting and replicating KCSA materials through Claude.

75. Goldberg is, therefore, liable to KCSA, under New York and/or New Jersey law, for the reasonable value of the misappropriated materials.

### COUNT VI — Breach of Shareholders Agreement

76. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth.

77. Goldberg's solicitation of Edibles.com violated Section 6.1 of the KCSA Shareholders Agreement.

78. Goldberg's continued solicitation of KCSA clients will cause KCSA damages and irreparable harm.

79. KCSA has suffered and will continue to suffer damages and irreparable harm as a result of Goldberg's breaches.

### COUNT VII – Breach of Fiduciary Duty (Customer Solicitation)

80. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

81. Goldberg's solicitation of Edibles.com breached his fiduciary duty to KCSA as a director and officer of KCSA under New York law.

82. Goldberg's continued solicitation of KCSA clients will cause KCSA damages and irreparable harm.

83. KCSA has suffered and will continue to suffer damages and irreparable harm as a result of Goldberg's breach of his fiduciary duty.

### COUNT VIII – Breach of the Computer Fraud and Abuse Act

84. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

85. Goldberg intentionally accessed KCSA's proprietary Claude Enterprise AI tool after his termination, without authorization to do so.

86. Both the physical computer Goldberg used in his unauthorized access of the KCSA Claude Enterprise AI tool, and the KCSA Claude Enterprise AI tool itself, are "computers" within the meaning of the Computer Fraud and Abuse Act (the "CFAA"), 18 U.S.C. § 1030 *et seq.*

87. Goldberg knew that any access he may previously have enjoyed to KCSA's proprietary Claude Enterprise AI tool was conditioned on his employment by KCSA, and that his termination as an employee by KCSA terminated his authorization to access the Claude Enterprise AI tool.

88. Goldberg's intentional, unauthorized accessing of the KCSA Claude Enterprise AI tool resulted in him wrongfully obtaining data in the form of the July 14 Files.

89. KCSA has suffered, and will continue to suffer, damages in excess of $5,000 as a result of Goldberg's unauthorized access to the KCSA Claude Enterprise AI tool after his termination.

### REQUEST FOR TEMPORARY, PRELIMINARY, AND PERMANENT, INJUNCTIVE RELIEF

90. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

91. KCSA is likely to succeed on the merits of its claims.

92. KCSA will suffer immediate and irreparable harm absent emergency injunctive relief because Goldberg's continued possession, use, and threatened disclosure of KCSA's trade secrets and confidential information cannot be fully remedied by money damages.

93. The balance of equities favors KCSA because the requested relief would only prevent Goldberg from using KCSA's proprietary materials and trade secrets, while allowing him to compete fairly using his own independent work and publicly available information.

94. The public interest favors the protection of trade secrets and the enforcement of fiduciary obligations.

95. While this litigation is brought to preserve the status quo until this dispute may be arbitrated under Section 8.7 of the Shareholders Agreement, KCSA has pleaded a claim for a permanent injunction in case the arbitrator determines that this dispute is not arbitrable, either entirely or in part.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

1. Enter a temporary restraining order and preliminary injunction prohibiting Goldberg, and all persons acting in concert with him, from using or accessing KCSA's AI tools and related confidential and proprietary materials for any purpose, and from disclosing, transmitting, or disseminating any KCSA trade secrets or confidential information;

2. After trial, enter a permanent injunction providing the same relief;

3. Order Goldberg to return to KCSA, and/or permanently delete and destroy, all KCSA confidential information and trade secrets in his possession, custody, or control, including all copies, excerpts, summaries, derivatives, and embodiments thereof, and to certify compliance under oath;

4. Award KCSA compensatory damages in an amount to be proven at trial;

5. Award KCSA exemplary damages and attorneys' fees to the extent permitted under the DTSA and other applicable law;

6. Award pre-judgment and post-judgment interest as permitted by law;

7. Award costs and disbursements of this action; and

8. Grant such other and further relief as the Court deems just and proper.

ELLENOFF GROSSMAN & SCHOLE LLP


By: /S/ *Paul P. Rooney*

   Paul P. Rooney
   John Brilling Horgan
   1345 Avenue of the Americas, 11th Floor
   New York, New York 10105
   (212) 370-1300
   (212) 370-7889 (fax)
   prooney@egsllp.com
   jhorgan@egsllp.com

*Attorneys for Plaintiff*
*Kanan, Corbin, Schupak & Aronow, Inc.*

Dated: New York, New York
       August 4, 2026

## VERIFICATION

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

Todd Fromer, under penalty of perjury under the laws of the United States, pursuant to 28 U.S.C. § 1746, deposes and says:

1.   I am the President of Kanan, Corbin, Schupak & Aronow, Inc. ("KCSA" or "Plaintiff"). I am authorized to make this verification on behalf of KCSA.

2.   I have read the foregoing Verified Complaint and know the contents thereof. The same is true to my own knowledge, except as to matters stated upon information and belief, and as to those matters, I believe them to be true.

3.   The grounds of my belief as to all matters not stated upon my own knowledge are based upon my review of KCSA's business records and communications, and discussions with KCSA personnel.

I affirm, under penalty of perjury under the laws of the United States, pursuant to 28 U.S.C. § 1746, that the foregoing statements are true and correct. Executed on August 4, 2026 in New York, New York.

Todd Fromer